FILED

2009 Jan-07  PM 03:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

SUSAN KEITH,

_____PLAINTIFF,

vs.                                          CASE NO. CV 04-J-2831-S

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA d/b/a
PRUDENTIAL FINANCIAL,

        DEFENDANT.

## MEMORANDUM OPINION and ORDER

This case is again before the court upon the conclusion of the appellate proceedings. The court's judgment in favor of defendant, upholding defendant's denial of plaintiff's claim for disability benefits under the group long-term disability plan issued and administered by Prudential, was reversed and remanded by the Eleventh Circuit Court of Appeals, which stated "we remand this case to the district court in light of *Oliver v. Coca Cola Co.*, 497 F.3d 1181, *vacated in part on petition for reh'g.* 506 F.3d 1316 (11th Cir.2007) as to step three, and our Circuit's recent decision in *Doyle v. Liberty Life Assurance Co. of Boston*, [524 F.3d 1352 (11th Cir.2008)] as to step six."  The court requested the parties file briefs on the issues addressed by the Eleventh Circuit, and the parties have done so (docs. 40 and 41). Having considered the instructions of the Eleventh Circuit, as well as the arguments

of the parties, the court finds as follows:

**Step Three Analysis**

The court has been specifically instructed to revisit its conclusions concerning

the evidence as to step three of the six step analysis set forth by the Eleventh Circuit

in *Williams v. BellSouth Telecomm., Inc.*, 373 F.3d 1132, 1137-38 (11th Cir.2004).

Specifically, the Eleventh Circuit instructed this court to reconsider its step three

conclusion in light of *Oliver v. Coca Cola Co., supra*, decided after this court entered

its initial decision in this case.  In that case, the Eleventh Circuit noted that "the plan

administrator's decision to deny benefits must be upheld as long as there is a

'reasonable basis' for the decision."  *Oliver*, 497 F.3d at 1195.  Additionally, the

district court is "limited to 'consideration of the material available to [the

administrator] at the time it made its decision.'" *Id*., quoting *Jett v. Blue Cross & Blue

Shield of Ala., Inc.*, 890 F.2d 1137, 1140 (11th Cir.1989).  The Court further held that

to determine whether the administrator's denial of benefits was arbitrary and

capricious, the district court should begin with the language of the Plan itself. *Oliver,*

497 F.3d at 1195.

The Plan before this court states in part:

You are disabled when Prudential determines that:

• you are unable to perform the ***material and substantial duties*** of your

*regular occupation* due to your *sickness* or *injury*; and

• you have a 20% or more loss in your *indexed monthly earnings* due to that *sickness* or *injury*.

Keith 0495 (emphasis in original).

> After 36 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

Keith 0495 (emphasis in original).  Under the plan, the claimant must provide proof of claim as follows:

> (1) That you are under the *regular care* of a *doctor*.

> (2) The appropriate documentation of your monthly earnings.

> (3) The date your disability began.

> (4) Appropriate documentation of the disabling disorder.

> (5) The extent of your disability, including restrictions and limitations preventing you from performing your regular occupation or gainful occupation.

> (6) The name and addresses of any hospital or institution where you received treatment, including all attending doctors.

> (7) The name and address of any doctor you have seen.

> We may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a doctor. This proof, provided at your expense, must be received within 30 days of a request by us.

In some cases you will be required to give Prudential authorization to obtain additional medical information, and to provide non-medical information as part of your proof of claim, or proof of continuing disability.  Prudential will deny your claim or stop sending you payments if the appropriate information is not submitted.

Keith 0508 (emphasis in original).  Additionally, the plan states that:

The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits.  The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.

Keith 0518.

In contrast to the Plan before the Eleventh Circuit in *Oliver*, the Plan here leaves "sole discretion" to determine eligibility for benefits with Prudential Insurance Company.  In fact, the plan states that "[y]ou are disabled when ***Prudential*** determines that you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury..." (emphasis added).  In contrast, the Plan in *Oliver* provided benefits whenever a participant in the Plan provided "a written application" and "medical certification" of disability.  *Oliver*, 497 F.3d at 1196.  Thus, because the Plan here vests complete discretion in the Plan Administrator, the court can only substitute its judgment for that of the defendant if the defendant acted arbitrarily and capriciously in denying the claim of the plaintiff.

The parties do not dispute that the plaintiff suffers from numerous disabling

conditions.  Rather, they dispute the extent to which those conditions prevent the plaintiff from performing the regular duties of her sedentary occupation.  The plaintiff aptly states that the "only question that is undecided is to what extent her illnesses prevent her from working."  Plaintiff's submission (doc. 41), at 6.  The plaintiff asserts her subjective symptoms are severe enough that she can not perform her regular occupation and further that defendant's failure to credit in full these subjective complaints was arbitrary and capricious.  *Id*.  The defendant responds that the plaintiff's position would require a claims administrator to blindly accept any subjective claim of disability.  Defendant's post-remand brief (doc. 40) at 3.

In *Oliver*, the Plan Administrator denied benefits because Oliver failed to present any objective evidence of disability.  The Eleventh Circuit recognized that medical evidence regarding pain is, by necessity, often subjective, such as the patient's own reports of his symptoms.  *Oliver*, 497 F.3d at 1196.  Here, the Plan Administrator never refused to consider subjective evidence.  Rather, the Plan Administrator determined that the plaintiff's subjective complaints were no different than they had been during the time that the plaintiff was able to successfully perform her job duties with reasonable accommodations from her employer.  *See e.g.*, Keith 0001, 0137.  It is that determination that the plaintiff refers to as arbitrary and capricious.

The medical records before the defendant at the time of its decision have been previously detailed by this court.  In summary, they reflect that in March 2003, Dr. Kwan noted that while the plaintiff felt relatively well while pregnant, after delivery of her child the pains in her neck, arms and legs returned.  Keith 0328.  Dr. Kwan recorded that the plaintiff "is right now coping well but she has been unable to consider going to work and feels that she will have to stay off of work considering her child care to be a full time job."  Keith 0328.  A June 16, 2003, letter from Dr. Kwan stated that the plaintiff's symptoms included easy fatigability, muscle pain, muscle stiffness, poor sleep, and difficulty concentrating; that the plaintiff's symptoms had recently worsened; and that the plaintiff was trying to avoid medications so that she could continue to breast feed her child.  Keith 0217.  Sitting for longer than one hour was noted to increase the plaintiff's symptoms.  Keith 0217.

Dr. Kwan completed a Medical Source Statement (Physical) on September 19, 2003.  Keith 0162-0165.  She believed that the plaintiff could lift and carry less than ten pounds occasionally, that standing and/or walking were limited to less than two hours in an eight hour work day due to poor stamina, and that she would have to alternate standing and sitting.  Keith 0162-0163.

Treatment records dated April 18, 2003, from Dr. Joseph B. Stachniak, a neurosurgeon, reflected that while the plaintiff had multiple medical problems for

years, the plaintiff "noticed that her symptoms significantly improved" while she was pregnant.  Keith 0228.  However, she "still has some occasional headaches," "some stiffness in her neck on a regular basis," and some "weakness in her hands," but "denies any obvious numbness in her hands or anywhere else in her body."  Keith 0228.  The plaintiff's only medication was listed as Tylenol p.r.n.  Keith 0228.  Upon examination, Dr. Stachniak found the plaintiff to have some decreased range of motion in her neck and minimal muscle spasm.  Keith 0228-0229.

In February 2003 Dr. Hopson recorded that the plaintiff's pain in her neck, shoulder, right hip and back increased after her pregnancy.  Keith 0244.  He noted radicular pain in the plaintiff's arms and right leg.  Keith 0244.  Upon examination, Dr. Hopson recorded that the plaintiff's neck had diffuse pain and trigger points, and that her lumbar spine was positive for pain at L5-S1, with pain radiating into her right hip.  Keith 0244.  However, the plaintiff had full range of motion and full muscle strength.  Keith 0244.  His impression was cervical and lumbar pain and radicular pain, myalgia with a question of fibromyalgia, arthritis and Sjōgren's syndrome. Keith 0244.

A letter dated June 30, 2003, from the plaintiff's physical therapist stated:

> When she started therapy, she was consumed with the idea of returning to her original job and employer – in spite of the fact that her work significantly exacerbates her symptoms.  In the past several months, I believe that Susan has come to the realization that her multiple chronic

conditions may not allow return to her corporate job with any acceptable quality of life, particularly with the added responsibility of caring for her infant.

Keith 0218.

The record also contained a letter dated June 20, 2003, from Dr. Ken Connolly, D.C., who notes that the plaintiff's body "cannot handle a job that requires constant sitting in a fixed position as this causes her symptoms of low back and muscle pain to become aggravated. She begins to ache all over and eventually she tended to get really fatigued and sick." Keith 0219. He concluded that "It is my professional opinion that this patient is unable to perform her normal work duties at her past job at MBNA due to the prolonged sitting, keyboard work and the required mental intensity and focus to perform the job properly. It is my opinion that if the patient was to return to her job, it would not be long until the patient's symptoms returned to the point that she was unable to work due to pain and possible illness from a gradual decline of her health." Keith 0219.

A January 2003 record from Dr. Petrone stated that the plaintiff "is having pain again all over. She states that she did well when she was pregnant." Keith 0307. She had no swelling of the joints but reported that she did not feel she could work and had difficulty sitting at a desk doing sedentary work. Keith 0307. However, she was noted to "look[] great and [was] in no acute distress." Keith 0307. Her joints were

not warm or swollen, although exam of her tender points reveal "exquisitely tender" points throughout.  Keith 0307.  Dr. Petrone opined the plaintiff suffered from fibromyalgia, worse than it had been.  Keith 0307.

Dr. Petrone recorded that upon examination, the plaintiff had tender points in the classic areas of fibromyalgia, but that her joints showed no synovitis.  Keith 0160. Dr. Petrone also noted that the plaintiff had an intermittently positive ANA, which Dr. Petrone believed was related to Sjōgren's Syndrome as the plaintiff had no underlying connective tissue disease.  Keith 0160.  Dr. Petrone concluded that she believed the plaintiff was unable to work because of her medical problems.  Keith 0161.

Dr. Matic noted that the plaintiff's physical exam was normal, but that she suffered from an immune dysfunction causing chronic fatigue and other symptoms. Keith 0166.  Dr. Matic also wrote that "few patients recover from immune dysfunction" and that most patients have to "live with their symptoms indefinitely." Keith 0166.  He noted in his October 2003 letter that he had seen the plaintiff for the first time four days prior to providing this opinion.  Keith 0166.

The plaintiff also went to Cary F. Camp, a chiropractor, who wrote that:

> I regret to inform you but the above referenced individual has a health
> condition which is and will prevent her from being able to perform a
> task which would allow gainful employment.  I feel the patient has a
> health disability which will prevent her from working in a capacity

where she could receive gainful employment.

Keith 0171.   The plaintiff was awarded Social Security Disability benefits on December 11, 2003.  Keith 0140-146.

Thus, six treating medical examiners and two chiropractors gave opinions that the plaintiff suffered from varying degrees of pain.   These opinions included everything from a normal physical examination to noting the plaintiff "looked great" to extremely tender trigger points.

The defendant had this evidence reviewed by a registered nurse, who concluded there was insufficient evidence to indicate that plaintiff was unable to perform sedentary work; a medical consultant who is board certified in physical medicine and rehabilitation, who reached the same conclusion; and an independent medical professional, who also concluded that the evidence did not support a claim of disability.  *See* Keith 0007, 0057, 0117-0125.  The defendant also interviewed the plaintiff's supervisor, who made accommodations for the plaintiff previously and would continue to do so, including allowing the plaintiff to work from home, and assigning her projects which did not require her presence at meetings.  Keith 0037-0038.

The Plan requires the claimant to provide evidence including "the extent of your disability, including restrictions and limitations preventing you from performing

your regular occupation or gainful occupation." Keith 0495. The court does find

evidence that Dr. Kwan stated that the plaintiff would have to alternate between

sitting and standing, but assigned no time limits on which the plaintiff could do so.

Keith 0163.

All of this evidence was before the Plan Administrator at the time it made its

decision. Having considered that evidence, in detail, the Administrator concluded

that the plaintiff failed to establish that, even given these limitations, she could not

continue to perform her job. In sharp contrast to the Plan before the court in *Oliver*,

which provided benefits when "a disabled participant submit[s] a 'written

application....'" the Plan here specifically states that "[y]ou are disabled when

**Prudential** determines that you are unable to perform the ***material and substantial***

***duties*** of your ***regular occupation*** due to your ***sickness*** or ***injury"*** (emphasis in

original and added). *See Oliver*, 497 F.3d at 1196; Keith 0495. The Plan here also

states that "The Prudential Insurance Company of America as Claims Administrator

has the sole discretion to interpret the terms of the Group Contract, to make factual

findings, and to determine eligibility for benefits." Keith 0508. Thus, unlike the Plan

in *Oliver*, this Plan requires more than a "medical certification of a disability."

Further distinguishing the facts of this case from *Oliver* is that in *Oliver*, the

Plan Administrator disputed the plaintiff's diagnoses of fibromyalgia and chronic

pain syndrome because Oliver failed to provide "objective evidence" of these

conditions.  In the facts before this court, the defendant has never disputed any of the

plaintiff's conditions.  Rather, the defendant noted that the plaintiff has had these

conditions for a number of years and managed to perform her job in spite of these

conditions.  The three consultants the defendant hired to review the records and

provide medical opinions each noted that nothing in the plaintiff's diagnoses had

changed between the time that she worked and the time of her claim, other than that

she had a baby.  In fact, the plaintiff herself stated that:

> Again Prudential is correct in their assessment.  MY CONDITION has
> not deteriorated since I have stopped working and I do not expect it
> to...however, it was deteriorating as I was working even though I follow
> a disciplined treatment regime.  I was living to be able to show up for
> work and further being exhausted by the conditions.  Preventing myself
> from getting worse is a full-time job and I am determined to NOT
> deteriorate.

Keith 0199.

Given the equivocal nature of the plaintiff's doctors' reports and plaintiff's

own statement, as well as the unequivocal nature of reports from the defendant's

consultants, the court remains unable to conclude that the defendant's decision was

arbitrary or unreasonable.[1]

---

[1]Whether or not the plaintiff is actually disabled is not the issue before this court.  Rather, the court may only examine whether the Plan Administrator reached its determination in a reasonable and non-arbitrary manner.  As made clear by *Williams v. BellSouth*, 373 F.3d 1132, 1138 (11th Cir.2004), which mandates affirming a "wrong but reasonable" decision, whether or not this court agrees with the decision of the administrator is not relevant.

**Step Six Analysis**

Nine months after this court issued its second opinion in this case, the Eleventh

Circuit issued its decision in *Doyle v. Liberty Life Assurance Company of Boston*, 542

F.3d 1352 (11ᵗʰ Cir.2008).  In that case, the Court, citing to *Metro. Life Ins. Co. v.

Glenn*, – U.S. –, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008), held that the heightened

arbitrary and capricious standard, applied when a claims administrator of an ERISA

plan operates under a conflict of interest, was implicitly overruled by Glenn.  *Doyle*,

542 F.3d at 1359.  The Eleventh Circuit further held that "the existence of a conflict

of interest should merely be a factor for the district court to take into account when

determining whether an administrator's decision was arbitrary and capricious."  *Id.*,

at 1360.  The Court specifically states that "the burden remains on the plaintiff to

show the decision was arbitrary; it is not the defendant's burden to prove its decision

was not tainted by self-interest."  *Id*.

As did the district court in *Doyle*, this court has found that the defendant was

vested with discretion, that its decision was reasonable, and that it operated under a

conflict of interest.  *See Doyle*, 542 F.3d at 1360.  The court in *Doyle* summarized,

"at this point the court had concluded that [defendant] did not abuse its discretion in

denying benefits."  *Doyle, id*; citing *Glazer v. Reliance Standard Life Ins. Co.*, 524

F.3d 1241, 1246 (11ᵗʰ Cir.2008).  The Eleventh Circuit stated that the only remaining

step in the *Williams* analysis was to determine whether the defendant's conflict of interest tainted its decision. *Doyle*, 542 F.3d at 1360.

This court has twice considered whether Prudential's conflict of interest tainted its decision and has twice concluded that it did not. The court previously noted that the defendant initially approved the plaintiff for benefits on February 5, 2003, and voluntarily continued paying those benefits through June 30, 2003, even though it determined by May 30, 2003, that the plaintiff was not eligible for benefits under the policy. *See e.g.*, Keith 0063, 0069. The defendant obtained the opinions of three different medical professionals regarding the plaintiff's disability, all of whom reached the conclusion that the plaintiff was not disabled. Keith 0007; 0057.

The defendant again considered the medical evidence when the plaintiff appealed the determination that she was not entitled to benefits. *See e.g.*, Keith 0009-11. When the plaintiff asked for reconsideration of the denial of the appeal, the defendant again considered the evidence and sought further evidence, including investigating the previous accommodations made for the plaintiff by her supervisor. Keith 0012, 0015, 0037-0038. The evidence clearly establishes that the defendant thoroughly investigated the plaintiff's claim. There is no evidence showing that the defendant was influenced by the conflict. As now mandated by *Glenn* and *Doyle*, the court considered the conflict and found no evidence that it impacted the defendant's

decision. *See Glenn*, 128 S.Ct. at 2351; *Doyle*, 542 F.3d at 1363. The defendant

considered the evidence at each level of the plaintiff's appeals.

In Doyle, the Eleventh Circuit concluded:

The evidence shows that Doyle had substantial medical problems. Some of the experts opined that she could not perform the material duties of her "Own Occupation." Other experts opined that objective medical evidence did not substantiate her claims and that she could perform the material duties of her "Own Occupation." Liberty Life is vested with discretion to determine eligibility under ChoicePoint's plan; thus we owe deference to its determination. *Glenn*, 128 S.Ct. at 2350 ("Trust law continues to apply a deferential standard of review to the discretionary decisionmaking of a conflicted trustee ...."). Because the evidence is close, we cannot say, even accounting for the conflict, that Liberty Life abused its discretion in denying Doyle benefits.

*Doyle*, 542 F.3d at 1363. Short of substituting its judgment in full for that of the Plan

Administrator, this court cannot find that the defendant abused its discretion in

denying the plaintiff's claim for benefits.

In conclusion, having considered the facts of this case in light of *Oliver* and

*Doyle*, the court remains of the opinion that the decision of the defendant was not

arbitrary, capricious, or an abuse of discretion.

**DONE** and **ORDERED** the 7th day of January, 2009.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

15